# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>DAVID RICHARD WILLIAMSON and<br>PEGGY LYNN WILLIAMSON,<br><br>    Debtors. | Case No.  02-82615-RGM<br>(Chapter) |
| RUBINA N. SIDDIQUI,<br><br>    Plaintiff,<br><br>vs.<br><br>GLORIA LYNN GARDNER, et al.,<br><br>    Defendant. | Adv. Proc. No. 05-1187 |

## MEMORANDUM OPINION

The defendants' motions to dismiss raise two issues: The propriety of a debtor continuing to market his home after having accepted a purchase offer subject to bankruptcy court approval; and the effect of this court's order approving the sale of the debtors' home on the successful purchaser's subsequent state court law suit against the competing offeror and the real estate agent.

David and Peggy Williamson filed a chapter 13 bankruptcy petition on May 28, 2002. Their chapter 13 plan was confirmed on September 11, 2002. Despite their initial success, by late 2004 they encountered difficulties and decided to sell their home and use the proceeds to complete the plan. On December 1, 2004, they entered into an Auction Marketing Agreement with Fox & Associates Partners, Inc., ("Tranzon Fox") for the sale of their home. The contract envisioned a public auction of the Williamson's home but permitted it to be marketed in the same manner as a traditional real estate agent would list and market the property prior to the auction. The one

significant difference is that the purchaser agrees to pay a buyer's premium of 10% of the sales price in addition to the gross sale price.[1] In a traditional transaction, the seller pays the real estate commission from the gross sales price.

The house sold quickly after being place on the market. Jerry Fleming submitted an offer in mid-December 2004. The debtors were out of town and before they saw Fleming's offer, Rubina Siddiqui submitted a higher offer which the debtors accepted and noticed for a hearing for January 26, 2005, to obtain court approval. Shortly before the scheduled hearing, Fleming submitted a new offer that was higher than Siddiqui's offer. Debtors' counsel properly advised the court of the competing offers at the hearing.

Both offers were written on the same contract form which was entitled "Auction Sales Contract". Both provided for a buyer's premium of 10% of the sales contract. Both were non-contingent and accepted the property in its as-is condition. Both were subject to court approval.[2]

Siddiqui and her husband, Uzair M. Siddiqui, who was not a party to the contract, objected to Fleming's contract at the hearing. Mr. Siddiqui is an attorney although he did not identify himself as such at the hearing. Tr. at 5, line 11. They objected to considering Fleming's offer on two grounds. First, they asserted that Mrs. Siddiqui had a ratified contract and that, therefore, the debtors could not pursue any other contract until the court ruled on her contract. Tr. at 7, 11. They also asserted that the auctioneer and real estate agents, Gloria Lynn Gardner and Tranzon Fox, misled Mrs. Siddiqui by telling her that the property was sold and not available for purchase when

---

[1] Whenever a sales price is referred to in this opinion, the buyer is also obligated to pay an additional 10% as the buyer's premium.

[2] The court approval term was an additional handwritten term initialed by the parties. It stated: "This contract is subject to bankruptcy court approval. Settlement to take place 20 days after bankruptcy court approval."

2

in fact it had not been sold and was available. Tr. at 8, 11. Upon finding out that the property was still available, Siddiqui presented her contract which was accepted by the debtors subject to bankruptcy court approval.

The court heard Siddiqui's objections and overruled them. The court noted that Siddiqui's contract was expressly contingent upon bankruptcy court approval. In addition to being an express contractual term, it is an accurate statement of the law with respect to sales of property of the bankruptcy estate other than in the ordinary course of business or that are otherwise subject to court control even when not expressly stated in the contract. *See* 11 U.S.C. §363(b). Until the court approves a sale, the property remains "on the market." The trustee, or in this case, the debtor, retains the ability to continue to market the property.[3] In fact, he may have an obligation to do so. The objective is to obtain the best price so as to assure the maximum distribution to creditors. This is accomplished, in part, by assuring that the marketing is full, fair and complete and that all prospective purchasers have a fair opportunity to participate in the process. This is well-established. It is reflected by the use of "stalking horses", break-up fees and other devices, all of which encourage broad participation in a bankruptcy sale and recognize the risks inherent in participation arising from the peculiar requirements of bankruptcy sales.

A private non-bankruptcy sale stands on a different footing. It is a private, bilateral transaction solely for the benefit of the immediate parties. There are no absent third-parties – that is, creditors – whose interests must be protected. No third-party approval – that is, court approval – is required. The parties make their own decisions and are bound by them.

---

[3] Even if the proposed contract contained a provision requiring the debtor or trustee to take the property off the market pending court consideration of the proposed sale, the provision could not be binding on the debtor or the trustee until it was itself approved by the court.

3

The court declined to approve either offer. Both prospective purchasers were willing to offer more for the property, clearly establishing that the best price had not yet been reached. While both Fleming and Siddiqui stated that there had been difficulties in presenting their offers, those difficulties were resolved when both presented their offers and appeared in court prepared to pursue their offers further. In light of the competing offers, the court denied the motion to sell the property pursuant to either proposed contract and ordered that a live auction be held in court two weeks later. This allowed the property to be further marketed thereby eliminating prior inadequate or improper marketing, if any, and assuring both Siddiqui and Fleming a fair and equal opportunity to participate in the sales process. Two weeks later, the auction was held as scheduled. There were no objections. Siddiqui was the highest and last bidder. An order of sale was entered on February 11, 2005 confirming the sale to Siddiqui. (Doc. Entry 46).[4]

Two days prior to the auction, Mrs. Siddiqui, represented by her husband, filed a motion for judgment in the Circuit Court of Loudoun County against Fleming, Gardner and Tranzon Fox. The motion for judgment made the same allegations Siddiqui had made in this court at the January 26, 2005 hearing: availability of the property; Gardner's failure to inform Siddiqui that a third party buyer could purchase the property after her contract was signed; Gardner's concealment of Fleming's offer so as to ambush Siddiqui at the January 26, 2005 court hearing; and Gardner's and Fleming's collusion in these matters. The motion for judgment concluded that Gardner and Tranzon Fox breached their duties owed to Mrs. Siddiqui under Title §54.1 of the Code of Virginia and the Regulations of the Virginia Real Estate Board and that Gardner's and Fleming's acts constituted

---

[4] The court orally approved the commissions to the real estate agents in accordance with the written agreements. This approval was not expressly stated in the order of sale but approval of the sales contract and auction agreement which provide for the real estate agents' and auctioneer's compensation and the court's express oral ruling necessarily approved their compensation.

improper interference of Siddiqui's business relationship with the debtors. The motion for judgment requested damages equal to the additional money Siddiqui assumed she would have to pay to purchase the property at the upcoming auction and that Gardner and Tranzon Fox be barred from collecting any fees in this transaction.[5]

The defendants removed the motion for judgment to this court and filed their motions to dismiss.

## DISCUSSION

A motion to dismiss an adversary proceeding is governed by the Rule 12(b)(6) standard applicable to civil proceedings. *See* Fed.R.Bankr.P. 7012(b). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.Ed. 2d 59 (1984).

The essence of Siddiqui's complaint is that Fleming and the real estate agents interfered with her contract with the debtors by submitting a higher and better offer after her offer was signed by the debtors. She complains that even though she was able to buy the property, she spent more than she would have had to pay if Fleming and the real estate agents had not interfered. The elements of improper interference are set out in *Maximus, Inc. v. Lockheed Information Management Systems Company, Inc.,* 254 Va. 408, 493S.E.2d 375 (1997). There must be a contract expectancy; the

---

[5]Siddiqui appears to assume that if Gardner and Tranzon Fox are denied their fees that she would not have to pay the buyers' premium. This is incorrect. However denominated, the entire purchase price, including the buyers' premium, is property of the estate. If the compensation were reduced or denied, the proceeds would be disbursed to creditors, or in this case where creditors are paid in full, to the debtors. The estate, not Siddiqui, benefits from a reduction in administrative expenses.

interfering party must know of the expectancy; the interfering party must intentionally interfere with the expectancy; the interfering party must use improper means or methods in interfering with the expectancy; and the interference must result in a loss. Those elements are not present in this case.

Siddiqui asserts that the debtors' ratification of her contract created a protected expectancy such that the property could no longer be marketed or competitive bids made. The real estate agents, she asserts, interfered with her expectancy when they continued to market the property and Fleming interfered with it when he submitted a better offer. The assertions that the property could no longer be marketed and that a third party could not submit a better offer are without merit. Both contractually and as a matter of bankruptcy law, Siddiqui's proposed contract was contingent on court approval. The property was subject to the court's continuing control and supervision under the confirmed chapter 13 plan and the sale was not in the ordinary course of the debtors' financial affairs. 11 U.S.C. §363(b). During the period between the execution of Siddiqui's contract and the hearing on its approval, the property remained on the market. Real estate agents could continue to market the property and solicit higher or better offers. The failure to obtain court approval of her contract was not the result of interference by Fleming, the real estate agents or anyone else but rather the normal process of properly exposing the property to the market.

Siddiqui's complaint that the real estate agent engaged in improper conduct or methods by attempting to prevent her from presenting an offer to purchase the property cannot form the basis for an action. Those actions preceded her offer to the debtors. The allegation that Fleming's offer was concealed from her is also of no avail. If these allegations were true, they would be sufficient to reject all contracts presented, including both Siddiqui's and Fleming's proposed contract. They are allegations that the marketing process was itself tainted. No contract, including hers, obtained

through a compromised marketing process could be accepted. She could no more benefit from a flawed marketing process than could anyone else. On the other hand, if the taint were purged, then she suffered no loss. The court's action in postponing the sale allowed both Siddiqui and Fleming additional time to determine what, if anything, they wished to do and to obtain additional financing, if necessary. It purged the transaction of any taint from the allegations raised by Siddiqui. No objection was raised to the postponement. It was a sufficient remedy to the alleged taint and prevented any loss.

In addition to being rejected on its merits, Siddiqui's complaint is barred by the prior rulings of this court under the doctrines of *res judicata* and collateral estoppel. *Res judicata* "precludes the litigation of all ground for defenses and recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior action." *In re Professional Coatings (N.A.), Inc.*, 210 B.R. 66, 75 (Bankr.E.D.Va. 1997). It serves two purposes. It supports the public policy that there must be "an eventual end to litigation." *Id.,* citing *In re Wizard Software*, 185 B.R.512 ,516 n. 9 (Bankr.E.D.Va. 1995). It also "promotes judicial economy by forcing the parties to rely on judicial decisions which, in turn, allows the court to resolve other disputes." *Id.,* citing *Brown v. Felsen*, 442 U.S. 127, 131, 99 S. Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). Collateral estoppel is limited to issues actually litigated.

> Claim preclusion bars a subsequent action when three elements are satisfied:
>
> 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.),* 81 F. 3d 1310, 1315 (4th Cir. 1996).

These three elements are satisfied in this case. Siddiqui, Gardner, Fleming, and Tranzon Fox were all parties in interest to the original action, the debtor's motion to sell real property. *Grausz v. Englander,* 321 F.3d 467 (4th Cir., 2003). Siddiqui's state court claim is the same claim she raised in response to considering Fleming's contract and in seeking approval of her contract. In rejecting the contracts on January 26, 2005, and in approving the sale of the property to Siddiqui at the auction on February 9, 2005, this court entered a final judgment on the merits. The court expressly rejected Siddiqui's ratified contract argument, purged the transaction of any taint in the marketing process by postponing the sale and necessarily found the sale free of any taint by approving the auction sale on February 9, 2005.[6]

For the reasons stated above, the complaint will be dismissed.

Alexandria, Virginia
June 28, 2005

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

John T. Donelan
Uzair M. Siddiqui
Robert B. Baumgartner

12244

---

[6] The timing of the filing of the Motion for Judgment in the state court is interesting. It was filed two days prior to the auction sale at a time when Siddiqui did not know if there would be any damages. There was no legal necessity to file the suit before the auction. If the timing of the suit was an attempt to chill the bidding at the auction, it appears to have been unsuccessful because the defendants did not know about the suit until after the auction.